**EXHIBIT A**



1 of 51 DOCUMENTS



Analysis
As of: Aug 30, 2014

DIANE RUSSELL, Plaintiff - Appellee, v. ABSOLUTE COLLECTION SERVICES,
INC., Defendant -- Appellant, and CHARLTON CLARKSON, Defendant.

No. 12-2357

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

2014 U.S. App. LEXIS 15718

April 11, 2014, Argued
August 15, 2014, Decided

**PRIOR HISTORY:** [*1] Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. (1:09-cv-00515-WO-WWD). William L. Osteen, Jr., Chief District Judge.
*Russell v. Absolute Collection Servs.,* 2011 U.S. Dist. LEXIS 61944 (M.D.N.C., Jan. 10, 2011)

**DISPOSITION:** AFFIRMED.

**COUNSEL:** ARGUED: Sean T. Partrick, YATES, MCLAMB & WEYHER, LLP, Raleigh, North Carolina, for Appellant.

Deepak Gupta, GUPTA BECK PLLC, Washington, D.C., for Appellee.

ON BRIEF: Allison J. Becker, Jennifer D. Maldonado, YATES, MCLAMB & WEYHER, LLP, Raleigh, North Carolina, for Appellant.

Joanne Faulkner, New Haven, Connecticut; Suzanne R. Begnoche, Chapel Hill, North Carolina, for Appellee.

**JUDGES:** Before MOTZ, DIAZ, and FLOYD, Circuit Judges. Judge Floyd wrote the opinion, in which Judge Motz and Judge Diaz joined.

**OPINION BY:** FLOYD

**OPINION**

FLOYD, Circuit Judge:

Diane Russell was the target of a dunning campaign waged by Absolute Collection Services, Inc. (Absolute Collection), wherein Absolute Collection made repeated collection demands to Russell for a debt that she incurred in 2008. Within one month of receiving Absolute Collection's first collection letter, Russell paid the outstanding bill in full. Although the collection letter instructed Russell to send payment for the debt to Absolute Collection, she instead paid the creditor directly and notified [*2] Absolute Collection of her payment during two telephone conversations with collection agents. Yet, over the next few months, Absolute Collection continued sending Russell demand letters falsely asserting that the already-paid debt remained due and threatening to report it to credit bureaus as "past due."

Russell filed suit against Absolute Collection in federal district court in North Carolina, alleging that Absolute Collection's conduct violated the Fair Debt Collection Practices Act (FDCPA), *15 U.S.C. § 1692-1692p*, and the North Carolina Collection Agency Act, *N.C. Gen. Stat. § 58-70-1 et seq.*, by, inter alia, falsely reporting the status of the debt and threatening to report the paid-off debt to credit bureaus as "past due." Following a five-day jury trial, the district court granted Russell's motion for judgment as a matter of law with respect to certain claims under the FDCPA and allowed the state

claims to go to the jury, which found in favor of Russell and awarded to her $37,501.00.

Absolute Collection now appeals the district court's orders (1) denying Absolute Collection's motion for judgment as a matter of law; (2) granting Russell's motion for judgment as a matter of law; (3) excluding certain evidence relevant to Absolute Collection's [*3] bona-fide-error defense; and (4) denying Absolute Collection's post-trial motions. We reject each of Absolute Collection's challenges and affirm the district court's judgment in its entirety.

I.

A.

We begin with the salient portions of the FDCPA's statutory framework and then survey the factual and procedural history before turning to the merits of Absolute Collection's claims. Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." *15 U.S.C. § 1692(e)*. To effectuate this purpose, the FDCPA regulates interactions between consumers and debt collectors by imposing affirmative statutory obligations upon debt collectors and proscribing certain abusive conduct. See, e.g., id. *§ 1692b* (setting forth debt collectors' obligations when acquiring location information about consumers); id. *§ 1692d* (prohibiting "any conduct the natural consequence of which is to harass, oppress, or abuse any person"); *Clark v. Absolute Collection Serv., Inc., 741 F.3d 487, 490-91 (4th Cir. 2014)* (per curiam) (explaining obligations triggered by a debtor's oral dispute under *§ 1692g(a)(3)*). As relevant here, the FDCPA makes it unlawful for debt collectors to make false or deceptive statements in the course of their collection activities. See *15 U.S.C. § 1692e*.

Debt collectors that violate the FDCPA are liable to the [*4] debtor for actual damages, costs, and reasonable attorney's fees. *15 U.S.C. § 1692k(a)(1), (a)(3)*. The FDCPA also provides the potential for statutory damages up to $1,000 subject to the district court's discretion. Id. *§ 1692k(a)(2)(A)*. A debtor generally is not required to show an intentional or knowing violation on the part of the debt collector to recover damages under the FDCPA. *Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. 2012)* ("[T]he FDCPA 'imposes liability without proof of an intentional violation.'" (quoting *Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011)*)). The statute, however, excludes from liability violations that were the result of bona fide errors. See *15 U.S.C. § 1692k(c)*. To qualify for the bona-fide-error defense, a defendant is required to show, by a preponderance of the evidence, that (1) it unintentionally violated the FDCPA; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation. *Id.*

B.

This appeal has its genesis in a $501 medical bill. After Diane Russell failed to remit payment for medical services rendered to her husband, Sandhills Emergency Physicians (Sandhills) enlisted Absolute Collection to recover the outstanding $501 balance. On December 8, 2008, Absolute Collection sent Russell an initial collection letter advising her that Sandhills "authorized [*5] us to extend to you a courtesy which allows you thirty (30) days in order to pay the balance on your account and prevent further, more serious collection activity." Absolute Collection followed its initial demand letter with five telephone calls to Russell over the next couple of weeks. On December 30, 2008, Russell paid the entire balance owed by mailing a check directly to Sandhills, which applied the payment to her account on January 8, 2009.

A collection agent from Absolute Collection telephoned Russell on February 6, 2009, seeking to collect on the Sandhills bill. Russell informed the agent that she paid the entire $501 debt directly to Sandhills and that the check had cleared her bank account. The agent noted Russell's response in her call notes and ended the call without asking for proof of payment. Later that month, however, Russell received another demand letter, stating, "We are dismayed by your inaction with respect to our previous requests that you settle your account with Sandhills Emergency Physicians. Our records indicate that you still owe $501.00 for services which were rendered to you." Russell telephoned Absolute Collection and again reported her payment to Sandhills. [*6] The collection agent advised Russell to send proof of her payment and suggested that she could set up a payment plan to pay the bill. Russell did neither.

On March 31, 2009, Absolute Collection sent Russell another collection letter, stating, "As you are aware, your account with Sandhills Emergency Physicians has not been satisfied." The letter also threatened, "[W]e will be reporting your past due account to national credit bureaus. This information will remain on your credit file for the next seven (7) years. You may be denied credit in the future as a result." Fearful that her credit would be ruined, Russell filed a complaint with the Better Business Bureau. When the complaint was transmitted to Absolute Collection, an employee from Absolute Collection contacted Sandhills and verified that Russell had paid the entire balance on the bill. Absolute Collection thereafter ceased its collection efforts with respect to Russell.

C.

Russell filed a complaint against Absolute Collection in federal district court, alleging violations of the FDCPA and parallel North Carolina consumer-protection laws. Absolute Collection denied liability and raised a bona-fide-error defense to the FDCPA claims. In [*7] March 2010, after the discovery period closed, Russell filed a motion for summary judgment on liability against Absolute Collection under the FDCPA. Absolute Collection opposed the motion, maintaining that Russell's claims under the FDCPA failed as a matter of law because she never disputed the debt in writing. Alternatively, Absolute Collection argued that it presented sufficient evidence to create a genuine issue of material fact pertaining to its defense of bona fide error. Relying upon an affidavit from its chief operating officer, Absolute Collection explained that its bona-fide-error defense was based on its practice of asking debtors for proof of payment as well as its reliance upon Sandhills to report subsequent payments on accounts that have been referred for collection.

The case was scheduled for trial during the district court's November 2010 term of court. That month, with Russell's summary judgment motion still pending, the district court held a pretrial conference. During the hearing, Absolute Collection clarified that it intended to base its bona-fide-error defense on the failure of its internal systems to receive payment information that Sandhills was contractually obligated [*8] to report. Following the conference, Russell filed a motion in limine, requesting the district court to exclude evidence of any procedures between Absolute Collection and Sandhills that Absolute Collection failed to disclose during the discovery period. The district court postponed the trial until January 2011.

The district court denied Russell's motion for summary judgment on January 10, 2011. Although it rejected Absolute Collection's contention that Russell's claims failed as a matter of law because she did not dispute the debt in writing, the district court nevertheless found that there were genuine issues of material fact regarding Absolute Collection's bona-fide-error defense. That same day, the district court issued a separate order continuing the trial to April 2011, due to inclement weather, and reopening discovery on the limited issue of Absolute Collection's assertion of bona fide error, "specifically with respect to any procedures that existed between [Absolute Collection] and Sandhills . . . requiring notice to [Absolute Collection] of payments made to an account."

During the reopened discovery period, Absolute Collection's discovery responses revealed that the facts supporting [*9] its bona-fide-error defense had changed once again. Absolute Collection claimed that McKesson Corporation--a previously undisclosed third-party--(or one of McKesson's subsidiaries) was responsible for sending Absolute Collection weekly reports showing payments made directly to Sandhills, and it provided Russell with the payment reports it received from McKesson between December 2008 and February 2009, the period during which Russell's account was referred for collection and when she made payment to Sandhills. Absolute Collection also identified, for the first time, the manager of its payment processing department, Laura Pavesi, as a witness with knowledge who could testify about the payment posting procedure between McKesson and Absolute Collection.

On March 22, 2011, Russell filed another motion in limine requesting the district court to prohibit Absolute Collection from introducing any evidence relating to its practice of relying upon McKesson to provide payment reports and blaming McKesson for not providing the payment report reflecting Russell's payment to Sandhills. Following a hearing, the district court found that Absolute Collection's untimely disclosure of evidence pertaining [*10] to the factual basis for its bona-fide-error defense was neither substantially justified nor harmless, and, therefore, it excluded Pavesi's testimony as well as all evidence related to McKesson and the duty of any third party to provide to Absolute Collection payment reports.

The case was tried before a jury over the course of five days. At the close of Russell's evidence, Absolute Collection moved for judgment as a matter of law, which the district court denied. At the close of all evidence, Russell moved for judgment as a matter of law on her claims under *15 U.S.C. § 1692e(2)(A), (8),* and *(10)*. The district court granted Russell's motion for judgment as a matter of law, finding that the representations in Absolute Collection's dunning letters were "objectively false" and that the March 31 letter contained a "threat to communicate false information to a credit bureau." The district court also found that Absolute Collection failed to present any evidence from which the jury could reasonably conclude that the mistakes giving rise to Absolute Collection's FDCPA violations were the result of a bona fide error, and, therefore, it determined that Russell was entitled to judgment as a matter of law on Absolute Collection's [*11] bona-fide-error defense. The jury found in favor of Russell on her state law claims and awarded her $1,000 in statutory damages under the FDCPA, $6,000 in statutory damages under state law, and $30,501 in actual damages.

Absolute Collection filed motions for a new trial and relief from the judgment. When the district court denied those motions, Absolute Collection timely appealed.

II.

We first address Absolute Collection's contention that the district court erred in denying its motion for judgment as a matter of law, a ruling we review de novo, viewing the evidence and all inferences reasonably drawn therefrom in the light most favorable to Russell. See *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489-90 (4th Cir. 2005).

*Federal Rule of Civil Procedure 50* authorizes a district court to enter judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Fed. R. Civ. P. 50(a)(1)*. Judgment as a matter of law "is properly granted if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004) (quoting *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995)) (internal quotation marks omitted).

Absolute Collection argues that it was entitled [*12] to judgment as a matter of law because Russell failed to present any evidence showing that she disputed the debt in writing and within thirty days of receiving the initial collection letter. Russell concedes that she did not dispute the validity of the debt in writing and within thirty days of receiving Absolute Collection's first demand letter but submits that such steps are unnecessary to state a claim under *§ 1692e*. Whether a debtor must dispute the validity of a debt as a condition to bringing suit under the FDCPA presents an issue of statutory interpretation, and we turn first to the relevant section of the statute.

*Section 1692g* requires debt collectors to send written "validation notices" to debtors informing them of their rights to require verification and dispute a debt. Pursuant to *§ 1692g*, the validation notice must include the amount of the debt, the name of the creditor, and "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." *15 U.S.C. § 1692g(a)(1)-(3)*. The notice also must apprise the debtor that, upon written request within thirty days, the debt collector will provide [*13] verification of the debt and the name and address information of the original creditor if different from the current creditor. Id. *§ 1692g(a)(4)-(5)*. If, within the thirty-day period, the debtor notifies the debt collector in writing that the debt is disputed or requests the name and address of the original creditor, the debt collector must suspend collection activity until it obtains verification of the debt or the requested information is mailed to the consumer. Id. *§ 1692g(b)*.

In Absolute Collection's view, a debt collector cannot be liable under *§ 1692e* for false, deceptive, or misleading representations unless the debtor disputes the debt in accordance with the validation procedures outlined in *15 U.S.C. § 1692g*. According to Absolute Collection, the permission afforded by *§ 1692g* to "assume[]" the validity of an undisputed debt must necessarily authorize a debt collector to continue seeking collection of such a debt. Because Russell failed to dispute her debt in writing and within thirty days of receiving the initial collection letter, Absolute Collection contends that it was entitled to judgment as a matter of law on Russell's *§ 1692e* claims. We reject this interpretation of the law.

Nothing in the text of the FDCPA suggests that a debtor's [*14] ability to state a claim under *§ 1692e* is dependent upon the debtor first disputing the validity of the debt in accordance with *§ 1692g*. Given the FDCPA's "comprehensive and reticulated statutory scheme, involving clear definitions, precise requirements, and particularized remedies," *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 233 (4th Cir. 2007) (internal quotation marks omitted), the absence of an explicit pre-suit validation requirement is telling. Put simply, had Congress intended for a debt collector's liability under the FDCPA to hinge upon a debtor's compliance with the validation provisions found in *§ 1692g*, we suspect that it would have so indicated with conspicuous language to that effect.

We need not rely exclusively upon the statute's silence, however, because both the express language and the remedial nature of the FDCPA persuade us that a consumer is not required to dispute the debt before bringing suit under *§ 1692e*. As our colleagues on the Third Circuit recently observed when rejecting the very argument Absolute Collection advances here:

> The language of *§ 1692g* indicates that disputing a debt is optional. The statute lists consequences "if the consumer" disputes a debt, *15 U.S.C. § 1692g(b)* (emphasis added), and it makes clear that failure to dispute a debt cannot be construed as an [*15] admission of liability. Thus, the statute protects a prospective litigant from being penalized in a lawsuit if he or she chooses not to seek validation.

*McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 2014 WL 2883891, at *4 (3d Cir. 2014) (brackets omitted) (footnote omitted) (citation omitted). Given the explicit protection conferred upon debtors who choose not to dispute their debts, it would be anomalous to conclude that a debtor forfeits his or her ability to

bring a lawsuit under the FDCPA simply because the debtor failed to invoke § 1692g's discretionary validation procedures.

Further, allowing debtors to raise claims under § 1692e without first contesting the debt best promotes the remedial nature of the FDCPA because it preserves debtors' abilities to obtain a remedy for violations of the statute. See *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-62, 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987) (recognizing the canon of statutory interpretation that remedial statutes are to be construed liberally). Although the statute authorizes enforcement of the FDCPA through the Federal Trade Commission, it also facilitates private enforcement by allowing aggrieved consumers to bring suit. *15 U.S.C. §§ 1692k(a), 1692l.* By providing prevailing plaintiffs statutory and actual damages, as well as reasonable attorney's fees, Congress plainly intended to regulate unscrupulous conduct by encouraging consumers [*16] who were the target of unlawful collection efforts to bring civil actions. See id. § 1692k(a); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) ("The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA."). To require debtors to dispute their debts under § 1692g before bringing suit, absent an explicit statutory directive requiring them to undertake such action, would frustrate debtors' abilities to vindicate their statutory rights and "undermine the FDCPA's protection of unsophisticated debtors, who would have no reason to suspect that they would be prevented from filing suit concerning deceptive communications as a consequence of failing to invoke the optional statutory validation procedure." *McLaughlin*, 756 F.3d 240, 2014 WL 2883891, at *4. The incongruity of Absolute Collection's interpretation is evident in this case: Russell had no reason to challenge the validity of the debt within the first thirty days of receiving the initial collection letter because the debt was indeed valid. Instead, she paid the bill and notified Absolute Collection of her payment. It would be inconsistent with the FDCPA's remedial scheme to hold that a plaintiff's ability to state a claim under the FDCPA is extinguished because the plaintiff failed [*17] to dispute the validity of the debt when he or she had no reason to seek validation in the first place.

Moreover, requiring debtors to dispute their debts as a condition to filing suit would produce consequences squarely at odds with the FDCPA's essential purpose of preventing "abusive, deceptive, and unfair debt collection practices." *15 U.S.C. § 1692(a)*. Under Absolute Collection's construction of the statute, a debt collector would have free rein to make false or deceptive representations about the status of a debt if the debtor failed to dispute its validity within thirty days of receiving the initial collection letter. Shielding debt collectors from liability for their falsehoods would thwart the statute's objective of curtailing abusive and deceptive collection practices and would contravene the FDCPA's express command that debt collectors be liable for violations of "any provision" of the statute. Id. *§ 1692k* ("[A]ny debt collector who fails to comply with any provision of th[e] [FDCPA] with respect to any person is liable to such person . . . ."). Congress obviously did not intend to immunize debt collectors from liability for violations of the FDCPA while concomitantly depriving debtors of a remedy under the [*18] statute. Indeed, the FDCPA's legislative history suggests that the purpose of the validation notice requirement was to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 382, 95th Cong. at 4 (1977) (emphasis added).

Finally, contrary to Absolute Collection's protestations, construing the FDCPA as permitting a consumer to bring a civil action without first disputing the debt would not drain § 1692g of meaning. The debt validation provisions of § 1692g still serve the important purpose of ensuring that consumers receive notice of their rights of verification and to dispute the debt. See *Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991). Further, many debtors will prefer to avail themselves of the prompt and inexpensive validation procedures as an alternative to the costly and time-consuming method of filing a claim in federal court. Thus, allowing debtors to seek relief for violations of § 1692e without disputing their debts does not render the statute's validation procedures superfluous.

In sum, a pre-suit validation requirement is unfounded in the text of the statute, contrary to the remedial nature of the FDCPA, and inconsistent with the FDCPA's legislative purpose [*19] of eradicating abusive collection practices. We therefore hold that a debtor is not required to dispute his or her debt pursuant to § 1692g as a condition to filing suit under § 1692e. Thus, we affirm the district court's denial of Absolute Collection's motion for judgment as a matter of law.

III.

Absolute Collection also assigns error to the district court's granting of Russell's motion for judgment as a matter of law on her claims under *15 U.S.C. § 1692e*. Aside from the arguments we have rejected above, Absolute Collection contends that Russell was not entitled to judgment as a matter of law because her claims under § 1692e hinged upon unresolved factual issues that should have been submitted to the jury. We disagree.

*Section 1692e* broadly prohibits debt collectors from making "false, deceptive, or misleading" statements in the course of their collection activities, and it includes sixteen illustrative examples of prohibited conduct. In this case, Russell relied upon three subsections: (1) *§ 1692e(2)(A)*, which makes it unlawful to misrepresent "the character, amount, or legal status of any debt"; (2) *§ 1692e(8)*, which prohibits a debt collector from "threatening to communicate to any person credit information which is known or which should be known to be [*20] false"; and (3) *§ 1692e(10)*, which proscribes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."

Whether a communication is false, misleading, or deceptive in violation of *§ 1692e* is determined from the vantage of the "least sophisticated consumer." *United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996)*. The least-sophisticated-consumer test is an objective standard that evaluates *§ 1692e* claims based upon how the least sophisticated consumer would interpret the allegedly offensive language. See *Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010)* ("[The least-sophisticated-consumer test] is an objective standard, designed to protect all consumers . . . ."); *Barany-Snyder v. Weiner, 539 F.3d 327, 333 (6th Cir. 2008)* ("Courts use the 'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct violates the FDCPA."). Although we have never directly addressed whether application of the objective least-sophisticated-consumer test to the language of a dunning letter is a question of law, we have assumed that to be the case. See *Nat'l Fin. Servs., Inc., 98 F.3d at 135-39* (concluding that the debtor was entitled to summary judgment when the least sophisticated consumer would interpret the collection letter as falsely threatening legal action in violation of *§ 1692e(5), (10)*). We recognize, however, that the decisions of our sister circuits that [*21] have directly confronted the issue are not harmonious. Compare *Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1060-01 (9th Cir. 2011)* (a debt collector's liability under *§ 1692e* should be resolved as an issue of law), and *Russell v. Equifax A.R.S., 74 F.3d 30, 36 (2d Cir. 1996)* (same), with *Gonzalez v. Kay, 577 F.3d 600, 606-07 (5th Cir. 2009)* (whether communication was false or deceptive in violation of *§ 1692e* is a question of fact for the jury), and *Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433, 441 (6th Cir. 2008)* (same).

Here, we believe that the collection notices are so plainly false and misleading that the district court was justified in concluding, as a matter of law, that the communications violated *§ 1692e*. The March 31 dunning letter represents that "your account with Sandhills Emergency Physicians has not been satisfied." Upon receiving the collection letter, the hypothetical least sophisticated consumer undoubtedly would interpret this statement to mean that the debt remains legally due and owing. Yet, it is undisputed that Russell had fully paid her debt with Sandhills at the time Absolute Collection sent the demand letter. A debt collector's false representation of the character or legal status of a debt violates the FDCPA. See *15 U.S.C. § 1692e(2)(A)*. Because the statement that Russell's debt "has not been satisfied" is false on its face and misrepresents "the character, amount, [and] legal status of [the] [*22] debt," the district court correctly concluded that Russell was entitled to judgment as a matter of law for her claim under *§ 1692e(2)(A)*.

We further agree with the district court's determination that the March 31 dunning letter threatened to communicate "credit information which is known or which should be known to be false," in violation of *§ 1692e(8)*, and that in doing so, Absolute Collection engaged in a "deceptive means to collect or attempt to collect any debt," in violation of *§ 1692e(10)*. The collection letter expresses Absolute Collection's intent to "report[] [the] past due account to national credit bureaus." The only reasonable interpretation that the least sophisticated consumer could reach after reading this statement is that Absolute Collection was threatening to refer the debt to credit bureaus as delinquent if it did not receive payment from Russell. At the time Absolute Collection sent the letter, however, it had in its files documentation of Russell's oral reports that she paid the debt and that the check had cleared the bank. Based upon Russell's representations to collection agents, Absolute Collection knew or should have known that the information contained in the letter was false. See *Clark, 741 F.3d at 491* (explaining [*23] that *§ 1692e(8)*'s protections are triggered upon a debtor's oral dispute of the debt). Thus, the district court correctly determined that, as a matter of law, the March 31 collection letter constitutes a "threat[] to communicate . . . credit information which is known or which should be known to be false," id. *§ 1692e(8)*, and a "false representation or deceptive means to collect or attempt to collect any debt," id. *§ 1692e(10)*.[*]

> [*] Absolute Collection asserts in passing that the district court erred in granting Russell's motion for judgment as a matter of law regarding Absolute Collection's bona-fide-error defense, claiming that the jury had sufficient evidence (notwithstanding the exclusion of evidence pertaining to McKesson) to find that Absolute Collection's FDCPA violations were the result of a bona fide error. Absolute Collection's opening brief does not contain any legal argument as to how the evidence Absolute Collection submitted at trial could support a valid bona-fide-error de-

fense, nor does it include any record citations or pertinent legal authority supporting such a claim. We deem this perfunctory and undeveloped claim waived. See *Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653 n.7 (4th Cir. 2006)* (conclusorily assigning error without providing supporting argument is insufficient [*24] to raise issue).

IV.

We turn next to the district court's determination that Absolute Collection violated the disclosure requirements of *Federal Rules of Civil Procedure 26(a)* and *(e)* and its corresponding decision to exclude evidence relevant to Absolute Collection's bona-fide-error defense under *Federal Rule of Civil Procedure 37*. We review for an abuse of discretion both the district court's finding of a disclosure violation and its decision to exclude evidence as a discovery sanction. See *Rowland v. Am. Gen. Fin., Inc., 340 F.3d 187, 195 (4th Cir. 2003)*; *Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 512 n.10 (4th Cir. 2002)*. In doing so, we are mindful of the broad discretion accorded to district courts to supervise discovery, including the imposition of sanctions for discovery abuses, as part of their case-management authority. See *Saudi v. Northrop Grumman Corp., 427 F.3d 271, 278-79 (4th Cir. 2005)*.

Unless stipulated by the parties or otherwise ordered by the court, *Federal Rule of Civil Procedure 26(a)* requires the parties to disclose the identities "of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses," as well as "all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." *Fed. R. Civ. P. 26(a)(1)(A)(i), (ii)*. The purpose of *Rule 26(a)* is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise. See *Wilkins v. Montgomery, 751 F.3d 214, 221 (4th Cir. 2014)*. Under *Rule 26(e)*, a party who has made a *Rule 26(a)* disclosure [*25] or responded to discovery must provide timely supplementation "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Fed. R. Civ. P. 26(e)(1)(A)*.

Pursuant to *Federal Rule of Civil Procedure 37*, a party who fails to comply with the disclosure requirements of *Rule 26(a)* or the supplementation requirement of *Rule 26(e)* "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Fed. R. Civ. P. 37(c)(1)*. In determining whether a party's non-disclosure is substantially justified or harmless, thereby excusing a disclosure violation, a district court is guided by the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)*.

Here, the district court found that Absolute Collection violated *Rule 26(a)* and *(e)*'s disclosure requirements [*26] by failing to disclose both the payment reports from McKesson and Pavesi as a witness during the initial twenty months of litigation. Because the belated information revealed a new factual basis for Absolute Collection's bona-fide-error defense and much of the information Absolute Collection had either known or should have known throughout the initial discovery period, the district court found that Absolute Collection's disclosure violations were neither substantially justified nor harmless. Thus, it excluded Pavesi's testimony and all evidence related to McKesson, including the collection payment reports.

Absolute Collection's principal argument on appeal--that its identification of Pavesi as a witness and its disclosure of the McKesson information were timely because they were made during the reopened discovery period--cannot survive scrutiny. The district court's January 10 order reopening discovery did not authorize the parties to conduct the broad discovery Absolute Collection suggests. To the contrary, the order, by its own terms, was limited to information "specifically with respect to any procedures that existed between [Absolute Collection] and Sandhills . . . requiring notice [*27] to [Absolute Collection] of payments made." Significantly, the January 2011 order was predicated upon Absolute Collection's prior representation during the November 2010 pretrial conference that its claim of bona fide error was based upon its failure to receive updated payment information that Sandhills, its client, was contractually obligated to provide. The information Absolute Collection produced during the reopened discovery period relating to McKesson, however, revealed a different factual basis for the bona-fide-error defense altogether. Contrary to Absolute Collection's assertion, therefore, nothing in the district court's January 2011 order reopening discovery supports Absolute Collection's contention that its belated disclosures were approved by the district court's

decision to reopen limited discovery. See *Saudi, 427 F.3d at 279* ("The district court should not be a victim of its own lenity, nor should [a party] capitalize on his noncompliance with the court's rules.").

It is undisputed that Absolute Collection failed to disclose Pavesi as a witness related to its bona-fide-error defense or the McKesson payment reports during the initial discovery period or at any time before the first trial date [*28] of November 2010 or the second trial date in January 2011. Given the broad discretion accorded to district courts to supervise discovery, we conclude that the district court did not abuse its discretion in finding that Absolute Collection failed to satisfy its disclosure obligations under *Rules 26(a)* and *(e)*.

We further conclude that the district court acted within its discretion in excluding Absolute Collection's evidence relating to its claim of bona fide error to ensure that there would be no unfair surprise at trial. The district court discussed each of the Southern States factors and reasonably concluded that Absolute Collection's disclosure violations were neither substantially justified nor harmless. Throughout the year and a half of litigation leading up to trial, including (1) Absolute Collection's responses to Russell's first discovery requests in November 2009, (2) its amendment to those responses, (3) its initial disclosures in December 2009, (4) its response to Russell's motion for summary judgment, and (5) its pretrial disclosures filed before the anticipated November 2010 and January 2011 trial dates, Absolute Collection failed to identify Pavesi--its own employee--as a potential witness [*29] or disclose the McKesson payment reports. Not only was the information pertaining to McKesson disclosed to Russell just two months before trial, but the belated discovery materials presented an entirely new factual basis as to Absolute Collection's bona-fide-error defense. Given the advanced stage of the litigation and the significance of the evidence to Russell's case, the district court justifiably concluded that the late disclosures were not harmless. See *NutraSweet Co. v. X-L Eng'g Co., 227 F.3d 776, 786 (7th Cir. 2000)* (finding harm when disclosure was made after the district court postponed the trial date once and trial was set to begin in six weeks). Further, Absolute Collection has failed to provide any justification--much less a substantially justified one--for the late disclosures. Without any legitimate reason for the disclosure violations, we are unable to conclude that the district court abused its discretion in excluding the evidence under *Rule 37 of the Federal Rules of Civil Procedure*.

V.

Last, Absolute Collection appeals the denial of its motions for a new trial under *Federal Rule of Civil Procedure 59* and for relief from the judgment under *Federal Rule of Civil Procedure 60(b)*. Because Absolute Collection's assignments of error with respect to its post-trial motions rest upon identical arguments rejected above, we affirm the district court's denial [*30] of those motions.

VI.

Accordingly, for the reasons set forth above, we affirm the judgment of the district court in its entirety.

AFFIRMED