IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| FLOYD RONALD BURKE,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
|       v. | ) | Civil No. 3:14cv838 (DJN) |
| | ) | |
| SHAPIRO, BROWN & ALT, LLP, *et al.*,<br>    Defendants. | ) | |
| | ) | |
| | ) | |
| R. DANTE DECAPRI,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
|       v. | ) | Civil No. 3:14cv201 (DJN) |
| | ) | |
| LAW OFFICE OF SHAPIRO,<br>BROWN & ALT, LLP,<br>    Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

These matters come before the Court on the consent of the parties pursuant to 28 U.S.C.

§ 636(c)(1) on Plaintiffs' Motion for Final Approval of Class Action Settlement, for Attorney's

Fees, Expenses, and Service Award Pursuant to the Settlement Agreement (the "Motion for Final

Approval") (DeCapri ECF No. 53; Burke ECF No.32)[1] filed on April 16, 2016.  The Court held a

Final Fairness Hearing on May 16, 2016.  For the reasons set forth below, the Court hereby

GRANTS Plaintiffs' Motion for Final Approval.

---

[1]     On January 22, 2015, the lawsuits were consolidated for purposes of pre-trial management and settlement. (DeCapri ECF No. 38; Burke ECF No. 6.)  The two cases were resolved in one settlement, and the parties have submitted identical documents in both matters.

## I. BACKGROUND

The Motion for Final Approval represents the culmination of nearly two years of contested litigation and negotiations between the parties. The parties now seek the Court's final approval of the settlement and dismissal of this lawsuit.

### A. Litigation History

On March 21, 2014, Plaintiff R. Dante DeCapri ("DeCapri") commenced this class action on behalf of himself and all others similarly situated, alleging that Defendant Law Office of Shaprio Brown & Alt, LLP ("SBA") violated the Fair Debt Collection Practices Act ("FDCPA"). by (1) failing to include "by the debt collector" or similar language in the required component of the thirty-day validation notice disclosure in violation of 15 U.S.C. § 1692g(a)(3); (2) contradicting and creating confusion in its § 1692g(a)(3) disclosure in violation of 15 U.S.C. § 1692g(a)(4); (3) using a false representation or deceptive means to collect a debt by omitting the "by debt collector" or similar language in the required component of the thirty-day validation notice disclosure in violation of 15 U.S.C. 1692e(10); (4) falsely stating that if the debtor chooses to dispute the debt he must do so within thirty days, in violation of 15 U.S.C. § 1692e(10); and (5) omitting the "in writing" requirement from the statement of the consumer's rights in violation of 15 U.S.C. 1692e(10).  (DeCapri Compl. (ECF No. 1).)

On March 21, 2014, Plaintiff Floyd Ronald Burke ("Burke") commenced this class action on behalf of himself and all others similarly situated.  Burke alleged that SBA violated the FDCPA by (1) failing to include "by the debt collector" or similar language in the required component of the thirty-day validation notice disclosure in violation of 15 U.S.C. § 1692g(a)(3); (2) falsely stating that if the debtor chooses to dispute the debt, he must do so within thirty days in violation of 15 U.S.C. § 1691g(a)(4); (3) failing to include "by the debt collector" and thus

2

using a false or deceptive means to collect a debt in violation of 15 U.S.C. § 1692e(10); (4) falsely stating that if the debtor chooses to dispute the debt he must do so within thirty days, in violation of 15 U.S.C. § 1692e(10); (5) omitting the "in writing" requirement from the statement of the consumer's rights, which is a false and deceptive means of debt collection in violation of 15 U.S.C. § 1692e(10); and (6) threatening non-judicial dispossession of Mr. Burke's property when there was no present right of possession in violation of 15 U.S.C. § 1691f. (Burke Compl. (ECF No. 1).) Burke also alleged that SBA breached its common law fiduciary duty to Burke by initiating foreclosure when it had no right to do so (Burke Compl.), but he voluntarily dismissed this claim. (Notice of Voluntary Dismissal of Count I of the Complaint (ECF No. 19).)

Shortly after the cases were filed, the parties engaged in significant discovery and related disputes. In *DeCapri*, SBA filed a Motion to Dismiss (ECF No. 10), and this Court denied the Motion (ECF No. 32). In *Burke*, Defendants filed a Motion to Dismiss as to Count I (ECF No. 11), and Plaintiff voluntarily dismissed Count I (ECF No. 19).

### B. Settlement

On September 28, 2015, the parties attended a Settlement Conference facilitated by the undersigned. The parties settled both matters and memorialized the terms in a Memorandum of Understanding. Defendants denied, and still deny, any liability, but agreed to the settlement to avoid the burden and risks of continuing the litigation. On February 2, 2016, the parties entered into a Settlement Agreement and Release (the "Settlement Agreement"), which was amended with the Court's approval on February 5, 2016 (DeCapri ECF No. 52; Burke ECF No. 31). The Parties settled the FDCPA claims on a class basis for $112,500.00 (the "Settlement Fund").

3

After the class claims were settled, the parties also resolved Plaintiffs' individual claims. The individual settlements are not part of the resolution of class issues.

On December 17, 2015, the Court entered an Order of Preliminary Approval of Class Action Settlement (the "Order of Preliminary Approval") (DeCapri ECF No. 48; Burke ECF No. 27) after a hearing on the matter. The Court certified a settlement class (the "Settlement Class") for the purpose of settling the case on a class basis. The Order of Preliminary Approval appointed American Legal Claim Services, LLC ("Settlement Administrator") as the settlement administrator and approved the Notice of Class Action Settlement (the "Notice"). The Court also appointed Plaintiffs as class representatives ("Class Representatives") and Plaintiffs' Counsel as class counsel ("Class Counsel").

## II. ANALYSIS

Plaintiffs ask the Court to approve the Settlement Agreement, the request for attorneys' fees of $150,000.00 and the $3,000.00 service award for each Class Representative.

### A. **Settlement Agreement**

Unlike most other civil suits, the Court must approve class action settlements. Federal Rule of Civil Procedure 23(e) provides that the parties can settle and dismiss a class action only with court approval against the standards of fairness, reasonableness and adequacy. Manual for Complex Litigation (Fourth) § 21.62 (2004) (citing Fed. R. Civ. P. 23(e)(1)(C)). Rule 23(e) requires that courts considering proposed class action settlements assess whether the settlement serves the best interests of represented class members. When the proposed settlement intends to preclude further litigation by absent persons, due process requires the adequate representation of their interests. *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158 (4th Cir. 1991). Though the parties enjoy a "strong initial presumption that the compromise is fair and reasonable," the

4

Court must still "appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). The Fourth Circuit provided the framework for a reviewing court to determine whether a settlement meets the fair, reasonable and adequate standards in *Jiffy Lube*. 927 F.2d at 158-59.

      **i.   Fairness**

When assessing the fairness of a settlement, the Court looks primarily at whether a "settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *In re Jiffy Lube*, 927 F.2d at 159, *Berry v. Schulman*, 807 F.3d 600, 615 (4th Cir. 2015). To make that determination, the Court considers four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [the FDCPA] class action litigation." *In re Jiffy Lube*, 927 F.2d at 159.

In the present action, the application of each factor weighs decidedly in favor of a fair settlement. The parties settled after they had engaged in extensive and aggressive discovery and a thorough settlement discussion. (Pl.'s Mem. in Supp. of Joint Mot. for Final Approval of Class Action Settlement Agreement ("Pl.'s Mem.")(DeCapri ECF No. 54; Burke ECF No. 33) at 18-19.) The parties engaged in extensive and substantive settlement talks facilitated by the undersigned. (Pl.'s Mem. at 19.) At the time of settlement, Plaintiffs were sufficiently prepared to proceed to trial, and Defendants were prepared to defend. (Pl.'s Mem. at 19.) Further, Class Counsel have extensive experience in litigating the FDCPA cases in this Court. *See, e.g., Fariasantos v. Rosenberg & Associates*, LLC, 2 F. Supp. 3d 813, 815 (E.D. Va. 2014); *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 466 (E.D. Va. 2011); *Zhang v. GC*

*Servs., LP*, 537 F. Supp. 2d 805, 807 (E.D. Va. 2008) (examples of the FDCPA cases with Class Counsel as Plaintiffs' Counsel).

### ii.   Adequacy and Reasonableness

The adequacy and reasonableness assessment looks at whether the class members received proper compensation for the case that they could present. *See Berry*, 807 F.3d at 615-16 (finding that injunctive relief properly compensated plaintiffs who gave up statutory damages when the District Court found the claim to those damages "speculative at best"). The Fourth Circuit looks at five factors when making an adequacy and reasonableness calculation: "(1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159. While all five factors enter into the calculus, the strength of the plaintiff's claims on the merits deserves the most weight. *Berry*, 807 F.3d at 615 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 (4th Cir. 1975)).

The factors in this case again weigh in favor of a finding of adequacy and reasonableness. First, a trial on the merits could have dragged on and consumed many more resources. Second, while the Court has no reason to doubt Defendant's ability to pay a litigated judgment, it takes nothing for granted in the present economy. Finally, and perhaps most importantly, not a single class member has filed or pursued an objection. (Pl.'s Mem. at 24.) Only one class member sent her objection directly to Class Counsel, but her objection did not appear to relate to the settlement, but rather to the servicing of her mortgage. (Pl.'s Mem. at 7.) This lack of

opposition strongly supports a finding of adequacy. *In re MicroStrategy, Inc. Sec. Lit.*, 148 F.Supp.2d at 667-68 (citing *Flinn*, 528 F.2d at 1173).

Accordingly, the Court finds that the Settlement Agreement presents a fair, reasonable and adequate bargain between Defendants and all members of the Settlement Class.

### B. Notice

The Court also must review the notice directed at class members to ensure compliance with Rule 23. Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The Court determines the reasonableness of the effort based on the circumstances, looking at the anticipated results, costs and amount involved. *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003). In plain, easily understood language, the notice must convey the nature of the action and claims, the opportunity and manner of opting out, the binding effect of the judgment, and the opportunity to enter an appearance through an attorney. *Id.* Directly mailing notice to class members satisfies due process, and "the interests of absent plaintiffs are sufficiently protected . . . when those plaintiffs are provided with a request for exclusion that can be returned within a reasonable time to the court." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-14 (1985).

Here, the Notice and the process undertaken by Settlement Administrator satisfied due process and the requirements of Rule 23. Having already approved the Notice in the Order of Preliminary Approval, the Court will examine the notice process. Settlement Administrator mailed the Notice via First Class U.S. Mail. (Aff. of American Legal Claim Services, LLC ("Settlement Adm'r Aff.") at ¶ 4)(Burke ECF No. 54-1; DeCapri ECF No. 33-1.) Of the 2,641 class members, only 35 (approximately 2% of the Settlement Class) remained undeliverable.

(Settlement Adm'r Aff. at ¶ 7.)  Settlement Administrator made reasonable efforts to find them using a commercially available address database as well as the National Change of Address database. (Settlement Adm'r Aff. at ¶¶ 3, 5.)  In addition to direct mail, Settlement Administrator established a website to allow access to the Notice, the Settlement Agreement, the Court's Order of Preliminary Approval and the contact information for Class Counsel and Settlement Administrator. (Settlement Adm'r Aff. at ¶ 8.)  Settlement Administrator also established a toll-free number, providing immediate and live assistance to anyone calling with a question about the Notice.  (Settlement Adm'r Aff. at ¶ 9.)

Accordingly, the Court finds that the process of delivering the Notice was "the best practicable under the circumstances" as required by Rule 23.

### C.  Award of Attorneys' Fees

Plaintiffs also ask this Court to approve an award of $150,000.00 in attorneys' fees.  The FDPCA is a fee-shifting statute that mandates the payment of attorneys' fees to a successful consumer. 15 U.S.C. § 1692(a)(3).  The FDCPA authorizes an award of attorneys' fees as determined reasonable by the Court.  15 U.S.C. § 1692(a)(3).  In common fund cases, there are two methods that courts typically use to determine attorneys' fees: (1) the lodestar method and (ii) the percentage method.  *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 786 (E.D. Va. 2001). Under the percentage method, an attorney who recovers a common fund assesses his fee against the common fund.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Under the lodestar method, the Court must first calculate the lodestar figure by multiplying the hours expended by a reasonable hourly rate.  *In re Microstrategy, Inc.*, 172 F.Supp.2d at 786.  After calculating the lodestar figure, the Court may increase or decrease the figure based on an assessment of a variety of factors.  *See Randle v. H & P Capital, Inc.*, 513 F. App'x 282, 283 (4th Cir. 2013) ("The

8

FDCPA, however, does not mandate a fee award in the lodestar amount, and the district court maintain the discretion to depart from it in appropriate circumstances.")(internal quotation marks omitted).

In determining what constitutes a "reasonable" number of hours and rate, the Court is guided by the following twelve factors first set forth in *Johnson v. Ga. Highway Express, Inc.* (the "Johnson Factors"), 488 F.2d 714, 717-19 (5h Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Randle,* 513 F. App'x at 283.

Here, Class Counsel ask the Court to use the lodestar method. Class Counsel represent that they expended 507.95 total hours litigating against Defendants. (Pl.'s Mem. at 26.) Multiplying the hours reasonably expended by each of Plaintiffs' counsel by their hourly rates, Class Counsel's lodestar calculates as $228,885.00; however, they request only a stipulated amount of $150,000.00. (Pl.'s Mem. at 26.)

###### i.    Class Counsel's hourly rates are reasonable.

Having reviewed Plaintiffs' submissions, the Court finds that the requested hourly rates are reasonable for all Class Counsel.[2] The Court must look to the prevailing market rates in the community in which the Court sits to determine a reasonable hourly rate, and the parties must prove the prevailing market rate via the affidavits of other local attorneys who are familiar with the skills of the applicants and the type of work in the relevant community. *Randle v. H&P Capital Inc.*, 2010 WL 2944907, *7 (E.D. Va. July 21, 2010) (internal citations omitted).

Class Counsel have many years of specialized experience pertaining to consumer law. (Kelly Decl. ¶¶ 4-9; Pittman Decl. ¶¶4-17; Rotkis Decl. ¶¶5-16.) Their experience includes class action work and the FDCPA cases, and their hourly rates have been approved by this Court in other cases. (Rotkis Decl. ¶ 17.) Their rates are based on the prevailing market rates for lawyers of comparable skill, experience and reputation in the Richmond area. (Rotkis Decl. ¶ 19.) Furthermore, Defendants do not contest Class Counsel's adequacy. Accordingly, the Court finds that the requested hourly rates reflect the market rate for lawyers of comparable skill, experience, and reputation performing similar services in the Richmond area.

###### ii.    Expended hours are reasonable.

To determine a reasonable number of hours expended, the Court may not simply accept the number of hours reported by counsel as reasonable. "The Court should not compensate

---

[2]      The hourly rates are:  $425.00 for Kristi C. Kelly; $350 for Andrew Guzzo; $475.00 for Dale Pittman; $625 for Lenoard Bennett; $425.00 for Susan Rotkis; $325.00 for Casey Nash; and $450.00 for Matthew Erausquin. (Decl. of Kriti C. Kelly ("Kelly Decl.")(DeCapri ECF No. 54-2; Burke ECF No.33-2) at 4-5); (Decl. of Dale W. Pittman in Supp. of Pl'.s Motion ("Pittman Decl.")(DeCapri ECF No. 54-3; Burke ECF No.33-3) at 21); (Decl. of Susan M. Rotkis ("Rotkis Decl.")(DeCapri ECF No. 54-4; Burke ECF No.33-4) at 15.) There were also three paralegals who billed in the two matters — Krystyn Brauning at $125.00 per hour; Donna Winters at $200.00 per hour and Vicki Ward at $200.00 per hour. (Rotkis Decl. at 15).

10

counsel for hours expended which the Court finds to be excessive, redundant, or otherwise unnecessary." *Randle,* 2010 WL 2944907 at *5 (internal citations omitted).

Having conducted a detailed review of the parties' submissions, the Court finds the hours expended to be reasonable. First, the complexity of issues involved in these matters supports the Court's finding that Class Counsel expended a reasonable number of hours. The parties had to perform extensive research to develop effective strategies to prosecute and defend their cases. Defendants filed motions to dismiss in both cases, which required the parties to spend many hours to brief the Court. It also appears that Class Counsel took great effort not to duplicate their work. Declarations filed by counsel demonstrate that they have coordinated work in a manner designed to maintain efficiency and to avoid unnecessary duplication. (Pittman Decl. ¶34; Rotkis Decl. ¶ 25.) Lastly, the fact that Class Counsel request the reduced fee to $150,000.00 further weighs in favor of a finding that the hours expended were reasonable. Also, Defendants do not challenge the fee requested by Class Counsel.

Accordingly, the Court finds that the requested fee award represents reasonable hourly rates and expended hours.

### D. Class Representative Award

Plaintiffs also request the approval of a $3,000.00 service award for each of them, to be deducted from the Settlement Fund. A "fairly typical" practice, incentive awards "are intended to compensate Class Representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry*, 807 F.3d at 613 (internal citations omitted). The Fourth Circuit has yet to provide clear guidance on the factors to use when

11

assessing the reasonableness of the size of an incentive award.[3]  However, several district courts

have adopted the test used by the Seventh Circuit that instructs courts to examine "the actions the

plaintiff has taken to protect the interests of the class, the degree to which the class has benefited

from those actions, and the amount of time and effort the plaintiff expended in pursuing the

litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  *See also Kirven v. Central*

*States Health & Life Co. of Omaha*, 2015 WL 1314086, at \*13 (D.S.C. 2015) (applying the *Cook*

factors to find reasonable an incentive award of $7,563.27); *Smith v. Toyota Motor Credit Corp.*,

2014 WL 4953751, at \*1 (D. Md. 2014) (quoting *Cook* in finding reasonable an incentive award

of $5,000 for each named plaintiff); *Decohen v. Abassi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014)

(quoting *Cook* to approve a $10,000 incentive award to the named plaintiff).

Here, Class Counsel represents that Plaintiffs began their lawsuits with the intent to

vigorously pursue them, for themselves and for the benefit of the class members that they

represent. (Pl.'s Mem. at 29.)  Class Representatives kept abreast of the case's status, reviewed

documents provided to them by counsel, and discussed with counsel various aspects of the case,

discovery issues and settlement negotiations.  (Pl.'s Mem. at 29.)  Defendants agreed to the

award and no class member has objected to the incentive award.  Therefore, the Court finds the

$3,000 service award appropriate.

### III. CONCLUSION

The Court finds that the Settlement Agreement is fair, reasonable and adequate, and

therefore approves the settlement as required by Rule 23(e).  After reviewing the Notice directed

to class members and the process undertaken by Settlement Administrator to provide notice to

---

[3]     Various studies have found that the average incentive award per plaintiff ranged from $9,355 to $15,992.  Newberg on Class Actions § 17.8 (5th ed.).

class members, the Court finds that they comply with the requirements of Rule 23. The Court also approves Class Counsel's request for an attorneys' fee award of $150,000.00. Finally, the Court finds the $3,000 service award to each of the named Plaintiffs to be appropriate.

For the reasons stated above, Plaintiffs' Motion for Final Approval of Class Action Settlement, for Attorney's Fees, Expenses, and Service Award Pursuant to the Settlement Agreement (DeCapri ECF No. 53; Burke ECF No.32) is hereby GRANTED.

An appropriate Order shall accompany this Memorandum Opinion.

　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　David J. Novak
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Richmond, Virginia
Date: _MAY 17, 2016_